UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| PATOKA VALLEY AIDS COMMUNITY ACTION GROUP, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:24-cv-100 ) |
| CITY OF LOOGOOTEE, INDIANA, | ) ) ) |
| Defendant. | ) |

**Complaint for Declaratory and Injunctive Relief**

**Introduction**

1.  Many communities in Indiana hold annual Pride celebrations, designed to promote and celebrate the LGBTQ+ community. In 2023, with the permission of the City of Loogootee, a successful Pride Festival was held in the community's downtown area, known as the Public Square, the site of many community events over the years. In November of 2023, the Loogootee City Council approved another Pride Festival, Loogootee PrideFest 2024, to take place in the Public Square on September 7, 2024. Plaintiff Patoka Valley AIDS Community Action Group, Inc. ("Patoka Valley") is the present sponsor and organizer of the planned Loogootee PrideFest 2024.

2.  However, in February of 2024, the City Council enacted a new ordinance that explicitly rescinded the November 2023 approval and imposed a new application process for private organizations using City areas for events and gatherings. Organizers for the

[1]

planned Loogootee PrideFest 2024 dutifully filed an application, in February of 2024, to have the previously approved festival on the same date and in same the Public Square location that was originally approved by the City in November of 2023. Despite being on the City Council's agenda in March, April, and May, a vote was never taken on the application, although another, larger, festival called Summer Fest is being allowed to take place in the Public Square in June of 2024, apparently without the organizers of that festival even applying for a permit.

3.   Then, on June 10, 2024, at a City Council meeting the attorney for the City Council read aloud a new ordinance repealing and replacing the February 2024 ordinance for special events, effective July 1, 2024.  There is not yet a printed version of the new ordinance that is available to the general public. Nevertheless, the Council suspended its rules and unanimously approved the new ordinance, which its members had not read prior to the meeting. At no time was any vote taken on the permit application for PrideFest 2024 that had been pending since February. The other festival, Summer Fest, is still scheduled to take place this month before the new ordinance goes into effect.

4.   The new ordinance is unconstitutional and violates Patoka Valley's First Amendment rights. Moreover, the City's obvious attempts to prevent PrideFest 2024 from occurring are, in and of itself, a First Amendment violation as it represents content-based discrimination. Declaratory and injunctive relief should issue, finding Loogootee's actions towards Patoka Valley and the current ordinance to be unconstitutional and

allowing the 2024 Loogootee PrideFest to take place, on September 7, 2024, in Loogootee's Public Square as approved in 2023 by the Loogootee City Council.

**Jurisdiction, venue, and cause of action**

5. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201, 2202.

8. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

9. Patoka Valley AIDS Community Action Group, Inc., is an Indiana nonprofit corporation and is the sponsor of Loogootee PrideFest 2024.

10. Loogootee, Indiana, is a city in Martin County, Indiana.

**Facts**

11. The population of Loogootee, Indiana in the 2020 census was approximately 2,600 persons.

12. In the center of Loogootee, in an area framed by Public Square Street, North Line Street, Main Street, and U.S. 231 is a fountain with a grassy area around it.

13. The area around the fountain, including the nearby streets, is informally referred to as the "Public Square." The Public Square is exclusively city property.

14. This area has been the site of numerous community events over the years.

15. In December of 2022, Loogootee Pride, an unincorporated group that is now part of Patoka Valley, received permission from the Loogootee City Council to hold the first Loogootee Pride Festival in the Public Square in June of 2023.

16. Permission was also received to partially close off the three city streets comprising the Public Square. U.S. 231 was not closed.

17. The closing of the streets did not require significant extra labor by employees of Loogootee. Barriers were dropped off the night before and persons associated with the Festival put them up.

18. No extra police presence was required for the 2023 Pride Festival.

19. The Pride Festival was held on June 10, 2023. It was attended by approximately 200 people and was very successful.

20. The City of Loogootee owns a portable stage, and it was erected on the Public Square during the event and was utilized by a variety of performers.

21. The City of Loogootee did not charge a fee to use the stage.

22. The purpose of the Loogootee Pride Festival, as with other Pride festivals held throughout Indiana and the United States, was to celebrate and promote the LGBTQ+ community.

23. The Festival featured entertainment, food, vendors, and a health fair.

24. Shortly after the Pride Festival, Timothy and Tracy Brown-Salsman, residents of

Loogootee and members of the Board of Directors of Patoka Valley, requested that the Loogootee City Council allow Loogootee PrideFest 2024 to be held on September 7, 2024, in the Loogootee Public Square from 10 a.m. to 5 p.m.

25. The purpose of the PrideFest is identical to that of the 2023 festival and similar activities were planned.

26. The request was made orally to the Loogootee City Council as was the request for the 2023 Pride Festival. The oral request was preceded by a written request to the Council that was made in October of 2023.

27. The Brown-Salsmans requested that the streets around the Public Square, with the exception of U.S. 231, be partially closed for PrideFest 2024, in the exact same manner as they had been for the 2023 Pride Festival.

28. In 2023, the closing of the streets had not caused any traffic difficulties as U.S. 231 remained open and it was easy for vehicular traffic to avoid the closed streets.

29. The oral application for Loogootee PrideFest 2024 was approved by the Loogootee City Council at its meeting on November 13, 2023.

30. A number of organizations stepped forward to contribute to the anticipated costs of PrideFest 2024. These include Martin County Tourism, the Community Foundation Partnership of Lawrence and Martin Counties, AIDS Resource Group out of Evansville, and Community Action Leading Loogootee.

31. Two of the above sponsors paid for a billboard on U.S. 231 advertising PrideFest

2024. The billboard is scheduled to go up on June 16, 2024, and will be in place through September 7, 2024.

32.     After the approval, the City of Loogootee added Loogootee PrideFest 2024 to its list of City events on its website, noting the date and time of the festival and that it would be on the Loogootee Public Square.

33.     However, on February 12, 2024, the City Council passed Ordinance No. 2024-1 ("the February Ordinance"), which established a formal procedure by private organizations to request the use of City property for events and gatherings. The February Ordinance is attached to this Complaint as Exhibit 1.

34.     Among other things, the February Ordinance stated that the areas that may be made available for events and gatherings include "a. Loogootee City Park; or b. Any other area that may be approved for use after completion of the application review process and final approval by the City Council."

35.     The Public Square has been the site of most of the public events held in Loogootee and plaintiff does not want to hold Loogootee PrideFest 2024 in the City Park, which is removed from the center of Loogootee and does not have a great deal of parking.

36.     The February Ordinance contained no standards guiding the discretion of the City Council in determining whether to approve a location other than Loogootee City Park.

37.     The February Ordinance also provided that

> [a]ll requests for use of City properties, properly submitted in writing, shall be subject to review and approval by the Board of Public Works and Safety

and the City Council. All requests shall be reviewed and approved strictly upon the order in which properly completed requests are received by the City.

(Exhibit 1).

38. The Board of Public Works and Safety consists of the Mayor, a member of the City Council, and three other persons.

39. However, the February Ordinance contained no standards for the City Council and Board of Public Works and Safety to utilize to determine if the request to use City properties is to be approved.

40. The February Ordinance also specifically revoked the permit that the City Council had approved in November of 2023 for Loogootee PrideFest 2024.

> With final passage of this Ordinance, the approval of an event by motion made during the City Council meeting of November 13, 2023, is hereby rescinded.

(Exhibit 1).

41. PrideFest 2024 was the only event approved at the November 13, 2023, City Council meeting.

42. The February Ordinance further provided that any person or group wishing to use the stage owned by the City of Loogootee must pay $800.

43. The February Ordinance required that all persons applying for an event permit must provide liability insurance in an amount to be:

> set by the Board of Public Works and the Common Council, and based upon the nature and size of the occurrence, the duration of the occurrence, and

other risk factors that are routinely used by insurance companies in issuing policies for public liability and personal injury coverages.

(Exhibit 1).

44. The City of Loogootee did not originally require the possession of liability insurance as a condition of approving the 2023 Pride Festival, but requested proof of insurance prior to the 2023 Pride Festival and a million dollar liability policy was provided.

45. Insurance has also been obtained for Loogootee PrideFest 2024. This is also a policy for a million dollars in liability.

46. Following the passage of the February Ordinance, the City of Loogootee removed PrideFest 2024 from its website listing future events.

47. Shortly after the passage of the February Ordinance, a member of the Board of Directors of Patoka Valley went to the office of the Loogootee City Clerk and applied for a permit for Loogootee PrideFest 2024 to be held on September 7, 2024. (Exhibit 2).

48. The application lists the sponsoring group for PrideFest 2024 as Loogootee Pride, although PrideFest 2024 is now being organized and sponsored by Patoka Valley.

49. The application requested use of the stage and requested the partial closure of the streets that bounded the Public Square, with the exception of U.S. 231.

50. These are the same street closures that the City of Loogootee allowed for PrideFest 2023.

51. The City of Loogootee refused to rule on the permit request for Loogootee

PrideFest 2024.

52. Timothy and Tracy Brown-Salsman, members of the Board of Directors of Patoka Valey attended every City Council meeting since the permit for PrideFest 2024 was applied for in February of 2024, and PrideFest was on the City-Council agenda at each monthly meeting, but the Council consistently avoided reviewing the matter or indicating when the Board of Public Works and Safety and the City Council would rule on the permit request.

53. In the meantime, the City announced that Loogootee Summerfest, a three-day festival, will take place on the Public Square beginning on June 20, 2024.

54. More streets in Loogootee will be closed for Loogootee Summerfest than were requested to be closed for Loogootee PrideFest 2024.

55. The Brown-Salsmans were informed by the then-Loogootee City Clerk that the sponsoring organization of Loogootee Summerfest is a private organization, the Ladies Auxiliary of the Loogootee Knights of Columbus.

56. As noted, the Brown-Salsmans have attended every City Council meeting since the passage of the February Ordinance and at no time did the Council consider and approve a permit application for SummerFest, and the Brown-Salsmans are unaware as to whether an application was even filed.

57. On May 25, 2024, New Beginning Community Church held an "Appreciation BBQ for the City of Loogootee," featuring food, in a City-owned parking lot across from the

Loogootee City Hall.

58. At no time since the passage of the February Ordinance did the Council consider any request for the Loogootee Appreciation Day barbeque at any of its public meetings.

59. Patoka Valley has already expended money, anticipating that Loogootee PrideFest will occur on September 7, 2024.

60. At the City-Council's June 10, 2024, regular meeting, the attorney for the Council read a new proposed Special Events Ordinance that would replace the February Ordinance.

61. No prior announcement was made that a new ordinance was to be considered at this meeting and written copies of the new Special Events Ordinance were not even available for the members of the Council or those in attendance.

62. An audience member recorded the attorney reading out loud the proposed Special Events Ordinance, and attached to this Complaint as Exhibit 3 is an unofficial transcript of that recording prepared from the recording by the staff of the office that employs plaintiff's counsel.

63. Under the Special Events Ordinance, the Public Board of Works is the City entity that determines whether to approve permits for special events.

64. Among other things the Special Events Ordinance:

    a. Requires that applications for a permit for a Special Event be filed with the City Clerk with as of yet unknown non-refundable fee no less than 45 days prior to the proposed event.

    b.    Allows the City to impose an additional fee that is based in part on the "extraordinary expenses" that the event will cost with that term being defined as "reasonable and necessary services provided by the city, which specifically result from the special event." This includes such things as "police protection, traffic control, fire monitoring, dedicated paramedic services, park services, and other services necessary to ensure the protection of participants and citizens, the proper functioning of city services and the proper administration of this ordinance and policy." The ordinance further provides that before the permit fee is determined the "police and fire department along with all other departments potentially affected by the proposed special event" must review the application and provide an estimate as to the cost of providing extraordinary services. The department heads have 30 days to provide this estimate to the City Clerk once the City Clerk notifies them of the application. However, all fees, including those deemed necessary for "extraordinary expenses," are waived if the event is celebrating a national holiday and insurance for the event will be provided by the City of Loogootee.

    c.    Provides that the areas of the City of Loogootee available for a Special Event are "the Loogootee City Park and any other area that may be approved for the use after completion of the application review process and final approval by the City of Loogootee." However, the Special Events Ordinance contains no standards for the City to determine whether to allow the event at a location other than the Loogootee City Park.

    d.    Provides that the organizer of any proposed Special Event must provide "personal data" information for the "organizer" of the event, which is defined as "the applicant and any other individual who assists in the planning, arrangement, or organization of any special event." "The police chief or designee will review" this "to determine if the applicant poses a risk to the public." This is reported to the City Clerk who then reports the findings to the Board of Public Works for its consideration.

    e.    Provides that applicants for a permit must submit the "legal names of all employees, volunteers, and hired volunteer entertainers who are responsible for the supervision or care of minors or who duties would require close contact and/or alone time with minors at the event." And the applicant must verify that they have checked the names against the national sex offender registry, and they must disqualify the names of anyone on that list. There is no definition of "close contact."

  f.  The ordinance list reasons that a permit can be denied including:

- "[C]onsideration of the health, safety and welfare of the community."

- "The special event use or activity would present a grave or unreasonable danger to the health or safety of the persons expected to participate in the event, the neighborhood in which the event will occur, the community as a whole, or the city property or resources required to be involved with the proposed event."

- "[U]pon receipt of the result of the investigation from the police chief deeming the applicants a risk to the public."

  g.  Requires that a permit applicant for an event for more than 200 people or one involving a road closure, must provide insurance that provides "minimum combined single limits for bodily injury and property damage of at least one million per person aggregate."

  h.  Provides that "[a]s soon as practical after the special event permit application is submitted the City Clerk will present the special event application estimated extraordinary fees and supporting documents to the Public Board of Works for review." However, no time limit is presented for a decision by the Board of Public Works.

  i.  Prohibits a permit holder from allowing any sound created by the Special Event "to carry unreasonably beyond the boundaries of the event."

65. Since the Special Events Ordinance goes into effect on July 1, 2024, it does not apply to the planned SummerFest that will take place for three days in Loogootee beginning on June 20, 2024.

66. It is the position of the City of Loogootee that in order for Patoka Valley to hold PrideFest on September 7, 2024, it must comply with the new Special Event Ordinance.

67. On June 11, 2024, Tracy Brown-Salsman went to the Loogootee City Clerk's office

to obtain a permit application for PrideFest 2024 and was informed that one was not available.

68. He then went to the office of the Mayor of Loogootee and requested a permit application and was told that one was not yet available as the City of Loogootee was waiting on the cost figures to assess for the permit. However, pursuant to the Special Events Ordinance, the standard fees and costs must be approved by the City Council and the City Council is not scheduled to meet again until July.

69. Plaintiff desires to hold PrideFest every year in the future in the Public Square in Loogootee.

70. Patoka Valley, the sponsor of PrideFest 2024, is being caused irreparable harm for which there is no adequate remedy at law by defendant's failure to allow the event to occur on the date and in the location previously approved by Loogootee.

71. At all times Loogootee has acted and has failed to act on grounds under color of state law.

**Legal claim**

72. The City of Loogootee's revocation of its November 2023 permission to hold PrideFest 2024 and its actions since that time violate the First Amendment to the United States Constitution.

73. The Special Events Ordinance passed on June 10, 2024, violates the First Amendment on its face because, among other things:

a. it contains inadequate standards constraining the discretion of the City of Loogootee concerning whether to approve the permit, what to charge for the permit, where that a special event can occur, or when a decision will issue on any submitted application;

b. it waives fees and the City assumes the cost of insurance if the Special Event celebrates a federally recognized holiday, but not if it is for other purposes.

c. it allows the City to alter the charges for "extraordinary services" based on its assessment of the subject matter of the event and how non-participants may react to it;

d. it requires that a permit holder not make "unreasonable" sound without any definition of what is reasonable;

e. it creates a burdensome and lengthy process that is unrelated to any legitimate governmental need and imposes an unconstitutional burden on expression in public places.

**Requested relief**

WHEREFORE, plaintiff requests that this Court

a. accept jurisdiction of this case and set it for hearing at the earliest opportunity;

b. declare that the City of Loogootee has violated the First Amendment rights of plaintiff for the reasons noted above;

c. enter a preliminary injunction, later to be made permanent, enjoining the Special Events Ordinance, and allowing plaintiff to hold Loogootee

        PrideFest 2024 in the Public Square of area in Loogootee as approved by the City Council in November of 2023;

d.    award plaintiff its costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

e.    Award all other proper relief.

        Kenneth J. Falk
        Stevie J. Pactor
        ACLU of Indiana
        1031 E. Washington St.
        Indianapolis, IN 46202
        317/635-4059
        fax: 317/635-4105
        kfalk@aclu-in.org
        spactor@aclu-in.org

        Attorneys for Plaintiff