UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| PATOKA VALLEY AIDS COMMUNITY ACTION GROUP, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF LOOGOOTEE, INDIANA, )<br>)<br>Defendant. ) | No. 3:24-cv-00100-RLY-CSW |

**Memorandum in Support of Motion for Preliminary Injunction**

**Introduction**

Pending before the Court is the motion for partial summary judgment of Patoka Valley AIDS Community Action Group, Inc. ("Patoka Valley") (Dkt. 62), which seeks to have Loogootee's current ordinance Establishing the Regulation and Cost for Use of City Property" (Dkt. 63-1), declared unconstitutional and permanently enjoined. With the filing of Patoka Valley's reply memorandum on June 3, 2025, the summary judgment motion has been fully briefed and the matter is ready for decision. However, Patoka Valley's PrideFest is scheduled to occur on September 6, 2025, and in the event that this Court is not able to issue a summary judgment decision by the end of August, Patoka Valley has sought a preliminary injunction so it can conduct PrideFest 2025 in the Public Square area as it has requested, but was denied by Loogootee. This is where previous Pride festivals have occurred. All the requirements for the grant of a preliminary injunction are met and one should issue.

**Facts**

Patoka Valley has set out in its Memorandum in Support of its Motion for Partial Summary Judgment of April 23, 2025 (Dkt. 63) the uncontested issues of material fact in this case (*id.* at 2-15). Patoka Valley listed additional undisputed material facts in its Reply Memorandum in support of Motion for Partial Summary Judgment. (Dkt. 68 at 5-6). To the extent that these facts are relevant to

[1]

the Court's determination of the motion for preliminary injunction, they are hereby incorporated by reference. However, the following facts have particular saliency for the preliminary injunction request.[1]

On September 9, 2024 Patoka Valley filed a permit to hold PrideFest 2025. (Supplemental Declaration of Tracy-Brown Salsman ["Brown-Salsman Supp. I"], Dkt. 50-1 at 4 ¶ 25; Answer Dkt. 46 at 8 ¶ 64 [admitting Exhibit 6 to the Amended Complaint (Dkt. 45) – the September 9, 2024 application]). The date requested for the 2025 Pride festival is September 6, 2025, and Patoka Valley's application sought to have the festival around the Public Square and requested that basically the same streets be closed as were closed for the 2023 Pride festival and that it had requested be closed for the 2024 festival. (Brown-Salsman Supp. I, Dkt. 50-1 at 1 ¶¶3-4, 4 ¶¶ 25-26; Dkt. 45-6 at 12).[2]

However, the City did not rule on the permit request and on January 13, 2025 it passed an amended ordinance, Ordinance No. 2025-1 ("the 2025 Ordinance"), which is formally titled "Ordinance to Repeal and Recreate Establishing the Regulation and Cost for Use of City Property" (Dkt. 63-1). As relevant here, the 2025 Ordinance:

- amends Section A-5(a) of the 2024 Ordinance, formally also titled "Ordinance to Repeal and Recreate Establishing the Regulation and Cost for Use of City Property" (Dkt. 45-3) so that it now reads:

A temporary planned occurrence on public or private property and involves at least one of the circumstances listed below:

(a) Produced or sponsored by a person or organization for which the event is extraordinary in that it is not ordinarily conducted on a daily or regular normal average use basis as a lawful use of the premises upon which such event is to occur [a]nd which will have at least fifteen (15) people attending the event.
(b) Exclusive use of all or part of City-owned facilities, within the City boundaries, such as buildings, parks, open spaces, streets, parking lots, athletic fields, etc., but does not include normal park shelter rentals;

---

[1] Some of what follows is taken directly from the April 23, 2025 memorandum in support of Patoka Valley's motion for partial summary judgment.

[2] Subsequent to submitting the application, Patoka Valley determined that it did not need the portion of North Street that it had requested be closed. (Brown-Salsman Supp. I, Dkt. 50-1 at 3 ¶ 26; Dkt. 45-6 at 12).

>   (c) Cannot be held completely within the confines of an existing building, park (sic);
>   (d) Will involve the temporary closing of a public street, alley, parking lot or public right-of-way;
>   (e) Will have over 300 people attending the event (or multiple events as part of a series) on private property, except those situations explained in section C of this chapter;
>   (f) Will require extraordinary services by any City Department.

(Dkt. 63-1 at 1).

- amends Section F-1(d)(5) of the earlier ordinance and limits the locations where special events can take place to the Loogootee City Park" or the "Green Space located in downtown Loogootee," allowing an applicant to choose either location "so long as the anticipated size of the event does not create any unsafe environment for the attendees of the event" and "[i]f both locations cannot safely contain the number of expected attendees and vendors, the Green Space Area shall be used along with streets around or near said Green Space (*id*);

- amends the earlier ordinance so that it now provides at Section 6(v)(15): "Issuance. The Board of Public Works will approve or deny special event permit applications within forty-five days and place conditions upon any permit. The applicant will be notified within ten (10) business days (*Id.* at 2);

After passing the 2025 Ordinance, the Loogootee City Council approved Patoka Valley's application for PrideFest 2025 to be held on September 6, 2025. (Second Supplemental Declaration of Tracy Brown-Salsman ["Brown-Salsman Supp. II"], Dkt. 63-2 ¶ 3). PrideFest was approved only to take place at the "Green Space" or the Loogootee City Park, not in and around the Public Square— the location designated by Patoka Valley in its application—and where previous festivals had taken place. (*Id.* ¶ 4). Neither Loogootee City Park nor the Green Space are acceptable for a number of reasons.

Loogootee City Park is a park located approximately a mile from the downtown area and it may not have adequate parking and space, particularly if the park is being used by others for activities unrelated to the festival. (*Id.* ¶¶ 8-9). Moreover, at the back of the park is a steep hill and the front of the park has a fence separating it from the street. (*Id.* ¶ 10). This would make it very difficult for participants at PrideFest to escape in the unlikely event that non-supporters attacked persons attending

[3]

the festival. (*Id.* ¶ 11).

And while the Green Space is now completed, Patoka Valley does not want to conduct PrideFest anywhere but in the Public Square area. (Fourth Supplemental Declaration of Tracy Brown-Salsman ["Brown-Salsman Supp. IV"] Dkt. 70-1 at 3 ¶ 14). Not only is this the area where the previous Pride Festivals have been held, but it is the most visible place in the City. (*Id.* at 2 ¶ 15). For example, the Facebook page of the City, https://www.facebook.com/p/The-City-of-Loogootee-61554966855434/, prominently displays in its "Photos" section pictures of the Christmas tree that has been placed on the Public Square in past years. Loogootee's Wikipedia page, https://en.wikipedia.org/wiki/Loogootee,_Indiana, has a photograph of the Public Square, listed as "Downtown Loogootee." (*Id.* at 3 ¶ 15). It is the most prominent place in the city to have an event, and it is where many events have been held in the City in the recent past. (Brown-Salsman Supp. II, Dkt 63-2 at 2 ¶ 12). This includes

- the tree lighting and Creator's day on December 1, 2024 where the streets around the Public Square were closed with the exception of U.S Route 231 (John F. Kennedy Avenue);
- the ice skating rink that was set up in December of 2024 for three days closing all of Public Square Street and part of Line Street;
- the Christmas stroll and parade on December 8, 2024, which closed part of U.S. Route 231 (John F. Kennedy Avenue);
- an event for children in October of 2024 by New Beginnings Church where Public Square Street was closed, attended by approximately 20 children;
- a car show that was put on by a local group in June of 2024 where part of Line Street and all of Public Square Street were closed;

(*Id.*). It is the area that is close to shops and is more conspicuous to the general public. (Declaration of Tracy Brown-Salsman ["Brown-Salsman"] Dkt. 10-1 at 3 ¶ 22).

The fountain in the Public Square is recognized on Google maps as the "Diversity Fountain." (Brown-Salsman Supp. III at 3 ¶ 14 and attached map). One of the fundamental purposes of Pride festivals is for LGBTQ+ persons to be seen, both literally and figuratively, and Patoka Valley does not want to be shunted to another location. (*Id.* ¶ 15). Instead, it wants to be front and center and to

do this the festival needs to be in and around the Public Square. (*Id.* ¶ 16). There is no more appropriate place for a Pride festival to take place as it, of course, celebrates diversity and this is exactly where Patoka Valley wishes to conduct PrideFest 2025 and all subsequent annual Pride festivals. (Brown-Salsman Supp. IV, Dkt. 70-1 at 3 ¶ 15).

At the current time, Patoka Valley is making the necessary arrangement to conduct PrideFest 2025 on September 6, 2025. (*Id.* at 3 ¶ 17). Entertainment and vendors have been obtained and they will be similar to last year's PrideFest and have been disclosed in the September 2024 application for the festival. (*Id.*; Dkt. 45-6 at 8-11). Because the Public Square area has not yet been made available for PrideFest, the vendors and entertainers have not yet been informed of the festival's precise location. (Brown-Salsman Supp. IV, Dkt. 70-1 at 4 ¶ 17). Patoka Valley will need at least one week's notice as to the location of PrideFest 2025 so that the vendors and entertainers can be notified and so that final arrangements can be made. (*Id.*).

The 2025 version of Summerfest took place in Loogootee from June 19 through June 21, 2025. (*Id.* at 1 ¶ 2). Although part of this festival took place in the new Green Space area, much of it occurred in other areas in Loogootee on city streets closed to vehicular traffic. (*Id.* at 1-2 ¶¶ 3-5). The carnival rides were set up in the Public Square area and the streets were blocked to vehicular traffic. (*Id.* at 1-2 ¶ 4). Vendors and food trucks for Summerfest were set up on the streets near the Public Square from which vehicles were also blocked. (*Id.* at 1 ¶ 3). During Summerfest, many more streets were closed to vehicular traffic than Patoka Valley requested be closed for PrideFest 2025. (*Id.* at 2 ¶¶ 7-10, and map attached as Exhibit 1 to Brown-Salsman Supp. IV). Moreover, streets were blocked from vehicular traffic for Summerfest beginning late in the afternoon on Wednesday, June 18 and the last barriers were not removed until June 23. (Brown-Salsman Supp. IV 70-1 at 2 ¶ 6). Indeed, even U.S. 231, was closed for a parade during Summerfest. (*Id.* at 2 ¶ 10). PrideFest 2025 will only require that streets be closed on the day of the festival, from 7:00 a.m. to 8:00 p.m. (*Id.* at 3 ¶ 11).

[5]

The refusal to allow Patoka Valley to hold PrideFest in the Public Square area is particularly offensive given that the City allows Summerfest to take place there. (*Id.* at 3-4 ¶ 16). This send a message to Patoka Valley that PrideFest, and by implication the LGBTQ+ community itself, is somehow deemed to be inferior to Summerfest and all other future events that are allowed in the Public Square area. (*Id.*).

**The preliminary injunction standard**

A court must weigh several factors in the preliminary injunction determination:

(1) whether the plaintiff has established a prima facie case, thus demonstrating at least a reasonable likelihood of success at trial;

(2) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue;

(3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and

(4) whether, by the grant of the preliminary injunction, the public interest would be disserved.

*See, e.g.*, *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 675 (7th Cir. 1987). The heart of this test, however, is "a comparison of the likelihood, and the gravity of two types of error: erroneously granting a preliminary injunction, and erroneously denying it." *Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 590 (7th Cir. 1984). Thus, "the more likely [the preliminary injunction movant] is to win, the less the balance of harms must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015).

**Argument**

**I.     Patoka Valley is likely to prevail on the merits of its First Amendment claim**

As Patoka Valley demonstrated in its legal memoranda in support of its recent filing for partial summary judgment, the 2025 ordinance violates the First Amendment in various respects.

1. It is substantially overbroad because (a) it restricts First Amendment expression to just two places in the City—the Green Space and Loogootee City Park; (b) it requires that a permit be sought at least 45 days before the event; and (c) it requires that a permit be obtained even for small groups. (Dkt. 63 at 16-19; Dkt. 68 at 6-12).

2. Even if the ordinance is subject to only intermediate scrutiny it is unconstitutional as its requirements fail to satisfy the requirement of narrow tailoring. This requires that the impingements on First Amendment expression "promote[ ] a substantial government interest that would be achieved less effectively absent the regulation" and "are not substantially broader than necessary to achieve that interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quotation and citation omitted). (Dkt. 63 at 20-22; Dkt. 68 at 6-12). Additionally, restricting Patoka Valley's area of expressive activity to only the Green Space or the Loogootee City Park fails to leave open ample alternative areas of communication. (Dkt. 63 at 22; Dkt. 68 at 13).

Patoka Valley incorporates by reference the arguments it has made in the memoranda cited above and they will not be repeated as they are currently before the Court in the context of the motion for partial summary judgment. However, the arguments are now made against the factual backdrop of the 2025 Summerfest having taken place—and having resulted in many more streets being closed to vehicular traffic, and for a much greater period of time, than Patoka Valley requests for PrideFest 2025. This fact alone demonstrates that barring Patoka Valley from the Public Square area, just one of the many areas that were closed to vehicle traffic by Summerfest, utterly fails the narrow tailoring requirement.

**II.  The other requirements for the grant of a preliminary injunction are met**

    **A.  Without a preliminary injunction Patoka Valley will suffer irreparable harm for which there is no adequate remedy at law**

The Supreme Court has made it clear that "the loss of First Amendment freedoms, even for minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Of course, Loogootee is offering two locations where it is willing to allowing the PrideFest to occur. But this does not detract from the unconstitutionality of the ordinance or its application to PrideFest. "One is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other area." *Schneider v. New Jersey, Town of Irvington*, 308 U.S. 147, 151-52 (1939). *See also, e.g., Gray v. Kohl*, 2007 WL 9702480, at *1 (S.D. Fla. Nov. 14, 2007) (irreparable harm demonstrated despite the claim of defendant that "Plaintiff can simply choose another location . . . to distribute Bibles"); *Doctor John's, Inc. v. City of Sioux City, Iowa*, 305 F. Supp. 2d 1022, 1039-40 (N.D. Iowa 2004) (irreparable harm demonstrated when ordinance that likely violated the First Amendment prevented business from opening in its chosen location). Patoka Valley has detailed both previously and above the many reasons that the offered locations in Loogootee are either unworkable or suboptimal, and the City's insistence that it nonetheless use these areas ignores the principle that "[t]he First Amendment mandates that we presume that speakers, not the government, know best both what they want to say and how to say it." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 790-91 (1988).

Patoka Valley is therefore suffering irreparable harm. And the Seventh Circuit has stressed that the "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

### B.   The balance of harms and public interest favor a preliminary injunction

"When the government is a party, the balance of equities and the public interest merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A governmental entity cannot claim that requiring it to comply with the First Amendment is harmful or burdensome. *See Christian Legal Soc'y*, 453 F.3d at 867 (holding

[8]

that if a governmental entity "is applying [a] policy in a manner that violates [the plaintiff's] First Amendment rights . . . then [the] claimed harm is no harm at all"). "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 859. And, more generally, "[t]here is the highest public interest in the due observance of all the constitutional provisions." *United States v. Raines*, 362 U.S. 17, 27 (1960).

### C. The preliminary injunction should issue without bond

While Federal Rule of Civil Procedure 65, by its terms, requires that a preliminary injunction be accompanied by "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined," Fed. R. Civ. P. 65(c), no bond should be required in the absence of the possibility of any monetary injuries. *See, e.g., Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (noting cases that "allow a district court to waive the requirement of an injunction bond [where] the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction."). The Mayor of Loogootee has testified that no problems occurred during an earlier PrideFest in the Public Square area. (Dkt. 24-1 at 13:24 – 14:4). And, in any event, Patoka Valley has an insurance policy, deemed to be satisfactory for the 2024 Pride Festival, which insures against any damages to Loogootee. (Brown-Salsman Supp. IV 70-1 at 4 ¶ 18).

**Conclusion**

Therefore, in the event that this Court is not able to rule on the pending motion for partial summary judgment prior to September 1, 2025, this Court should enter a preliminary injunction, without bond, enjoining the 2025 Loogootee ordinance entitled "Ordinance to Repeal and Recreate Establishing the Regulation and Cost for Use of City Property" and allowing PrideFest 2025 to occur on the date, time, and in the location that Patoka Valley requested in its September permit request.

Kenneth J. Falk
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@clu-in.org

Attorneys for Plaintiff